## CIRCUIT COURT OF SPOTSYLVANIA COUNTY

D. R. Hall Construction, Inc.

v.

Spotsylvania County
Board of Supervisors

September 3, 1996

Case No. L96-8

BY JUDGE WILLIAM H. LEDBETTER, JR.

The issue in this construction contract case is whether the contractor's claims are barred because they were not submitted to the owner in a timely and proper manner as required by law and the parties' contract.

### Summary of Facts

Because no evidence has been taken at this stage of the litigation, the facts recited here are gleaned from the parties' pleadings and attachments.

The Board of Supervisors of Spotsylvania County (the County) and D. R. Hall Construction, Inc. (Hall) entered into a contract dated October 14, 1994, for construction of a fire station. In addition to the basic standard form agreement, the contract documents include AIA General Conditions (AIA Document A201, 1987 Edition); a 23-page addendum to the General Conditions; plans and specifications; and various other documents about which there seems to be no dispute.

Work began on the project but was soon hampered, according to Hall, by "errors and omissions" in the plans and specifications and by "the County's interference with [Hall's] performance." The County contends that the delays were caused by Hall's "failure to follow the contract speci-

fications" and "to properly supervise and coordinate suppliers and subcontractors."

Despite the delays and other frustrations, Hall alleges that the work was substantially completed by June 23, 1995. The County occupied the building on July 10, 1995.

Then, three days later, according to Hall, the County presented a "bogus" punch list and refused to make final payment until the items on that list were corrected. On July 27, 1995, Hall continues, it submitted a request for payment based on "substantial completion," but again, the County refused to pay. Attempts to resolve the disputed items were unsuccessful, but the County released all but $53,000.00 of the basic contract price in September of 1995.

Hall contends that it filed a formal claim pursuant to Virginia Code § 15.1-550 on September 15, 1995, and that the Board of Supervisors denied the claim on December 13, 1995.

On February 26, 1996, the County terminated the contract and has refused to pay the balance of the contract price or additional money demanded by Hall.

### Status of the Litigation

Hall instituted this action on January 11, 1996. Hall's motion for leave to file an amended pleading was granted on May 6, 1996. Thereupon, Hall filed a 33-page "Amended Motion for Judgment and Appeal of Disallowance of Claim." The County filed a plea in bar, demurrer, and motion to crave oyer.

The court heard arguments on the County's plea and demurrer on August 5, 1996, and took the matter under advisement.

### The Contract

The contractual provisions pertinent to the issue before the court are not in dispute.

Claims and disputes are governed by §§ 4.3 and 4.4 of the General Conditions, as modified by the 23-page addendum to the General Conditions. Relevant here, the contract provides that claims made by the contractor "must be made within 21 days after occurrence of the event giving rise to such claim or within 21 days after the [Contractor] first recognizes the condition giving rise to the claim, whichever is later. Claims must be made by written notice."

Further, the provision expressly requires that the contractor submit any claim within the aforesaid time limits "as a condition precedent to the institution of litigation by the contractor with respect to the subject matter of that claim." Pursuant to § 4.4 of the General Conditions, as modified by the Addendum, the contractor submits claims to the architect whose decision is final and binding but subject to review by the County.

First, Hall contends that this action is not based on "claims" as that term is used in § 4.3 of the contract. Rather, Hall points out, it seeks damages from the County based on the County's failure to make payments when due, the County's interference with progress of the work, and the County's failure to provide adequate plans and specifications.

Generally, "claim," a broad and comprehensive word, means "to demand as one's own; to assert; to insist." Black's Law Dictionary (4th ed. 1951), p. 313. In common parlance, it simply means "to demand as rightfully belonging to one." Webster's New World Dictionary (Rev. 1984), p. 114.

In this case, however, the court need not resort to dictionary definitions. The contract itself defines the word. Under 4.3.1, a claim "is *a demand or assertion by the contractor seeking, as a matter of right, adjustment or interpretation of contract terms, payment of money, extension of time, or other relief with respect to the terms of the contract*."

It is difficult to imagine a broader or more comprehensive definition of "claim" than the one used by the parties in their contract. Clearly and unambiguously, a "claim" includes any assertion of entitlement to monetary damages resulting from the County's violation or breach of any provision in the contract or to *any other relief* with respect to contractual matters.

Therefore, Hall's argument that the County's breaches are not "claims" under § 4.3 of the General Conditions and are not affected by the time limits on "claims" in § 4.3.3 is without merit.

Next, Hall contends that the contract provisions regarding the submittal and resolution of claims and disputes are void because, if literally construed, they impose unconscionable deadlines and leave the final decision on all such matters with the County, one of the parties to the contract.

The court finds that the time limits are not unconscionable. Given the nature of construction, it is reasonable for an owner to protect itself by contractual language against the assertion of claims and demands about which it may know little or nothing until after the project has progressed to other stages or is substantially completed and the owner's funds have

been expended. Thus, an owner can insist that the parties agree to a provision in the construction contract requiring the contractor to submit any demand for more money, more time, or any other relief related to problems encountered during the course of construction, to the owner or the owner's agent on the job, the architect, in a specified timely manner.

The Court also finds that the final resolution of "claims" under the contract is not left to the County. Although the standard provisions for arbitration of unresolved claims and disputes were eliminated from the General Conditions by agreement and no administrative appeal procedures have been adopted, § 13.1.1 of the contract expressly allows for judicial review of any dispute involving "the performance, nonperformance or alleged breach" of the contract. Furthermore, the County does not contend that its decisions to withhold money from Hall and to refuse to pay additional money demanded by Hall are non-reviewable. In fact, the County implicitly concedes, at least for purposes of this decision, that Hall would have a right to maintain this action *if* it had submitted these claims during the course of construction in the required manner.

Hall also contends that the contract provisions limiting the time within which claims must be submitted are unenforceable because they are inconsistent with the Virginia Public Procurement Act. This argument requires the court to review the applicable statutes.

### The Statutes

In its original pleading, Hall alleged that it was filing the claim pursuant to Virginia Code § 15.1-552. In its amended pleading, Hall emphasizes the Virginia Public Procurement Act but mentions again § 15.1-552.

Virginia Code §§ 15.1-550 to 15.1-554 sets forth the procedure for filing general claims against a county. The Procurement Act has its own requirements for submitting claims and maintaining suits on procurement contracts. Because the Procurement Act is the more specific law, its provisions prevail over the more general provisions of the claims statutes found in §§ 15.1-550 et seq. *Harvey Const. Co. v. Fairfax County*, 31 Va. Cir. 177 (1993). Therefore, Hall's argument that the contract is inconsistent with the governing statutes must be determined by a review and analysis of the Procurement Act.

The Procurement Act enunciates the public policies pertaining to governmental procurement from nongovernmental sources. Virginia Code § 11-35(B). It is intended to maximize competition, to assure that all qualified vendors and contractors have access to public business, to pro-

vide public bodies of the Commonwealth a way to obtain high quality goods and services at a reasonable cost, and to allow individual public bodies to enjoy broad flexibility in fashioning details of such competition. Section 11-35(G).

The Act permits a locality to "opt out" by adopting an ordinance or resolution containing "alternative policies and procedures" that are "based on competitive principles" and which are "generally applicable to procurement of goods and services by such governing body . . . ." Section 11-35(D). An "opting out" locality is nonetheless bound by certain mandatory provisions of the Act. *See* § 11-35(E).

The portion of the Act that is pertinent to this case is § 11-69. Pursuant to that statute, contractual claims, whether for money or other relief, must be submitted in writing within 60 days after final payment. In addition, written notice of the contractor's intention to file such claim must have been given at the time of the occurrence or beginning of the work upon which the claim is based. Public bodies must include in their contracts a procedure for consideration of claims, including establishment of a time for a final decision by the public body with respect to claims made against it. The decision of the public body is final unless the contractor invokes administrative procedures, if available, or brings an action in a circuit court under § 11-70(E).

As pointed out above, the Act permits a locality to opt out by adopting its own procurement policies and procedures, but in such case, the locality is not exempted from certain provisions of the Act. Those mandatory provisions are enumerated in § 11-35(E). Section 11-69 is *not* among the enumerated mandatory provisions. It follows that a locality is exempt from the provisions of § 11-69 if it creates its own policies and procedures regarding contractual claims.

Spotsylvania County adopted a local procurement policy pursuant to § 11-35(D) in 1992. Thus, our analysis turns to the local ordinance.

*Spotsylvania County Procurement Ordinance*

The section of the County's procurement ordinance that governs submittal of claims (Section 4-7) contains the same language as § 11-69(A) of the Act except the County extends a ten-day grace period for the filing of a notice of contractor's intention to submit a claim. The claim itself must be submitted to the County within sixty days of final payment. In other words, the County policy regarding time requirements for submitting con-

tractual claims is identical to requirements set forth in the Act except for the addition of the ten-day grace period.

The County ordinance further provides that the decision of the County on the claim is final unless appealed to the Spotsylvania County Circuit Court. Section 4-8(e).

## Which Provision Governs

Having reviewed and construed the parties' contract, the relevant provisions of the Procurement Act, and the applicable section of the County's procurement ordinance, the court must now determine whether those provisions can be harmonized and, if not, which provision governs.

The provisions of the Procurement Act and the County ordinance can be harmonized. As explained above, the Act itself permits the County to opt out of the provisions of § 11-69 by creating its own policy and procedure related to submittal of contractual claims, including time requirements. The County has done that. Therefore, the provisions of the Act that would normally govern the time within which a contractor's claim must be submitted have been supplanted by the County ordinance.

However, the provisions of § 4-7 of the County ordinance, described above, cannot be harmonized with § 4.3 of the General Conditions of the parties' contract.

The ordinance contemplates a two-step procedure for submitting construction contract claims. First, the contractor must file a written *notice of intention to file a claim* within ten days of the occurrence of the event giving rise to the claim or the beginning of the work upon which the claim is based. Later, if the dispute is not resolved, the contractor must submit the *claim* in writing to the Board. The claim must be submitted no later than sixty days after final payment.

The contract, on the other hand, speaks only of *claims*. It contains nothing resembling a notice of intention to file a claim. The contract requires that the contractor submit its *claim* within twenty-one days after occurrence of the event giving rise to such claim or within twenty-one days after the contractor first recognizes the condition giving rise to the claim, whichever is later. In essence, a "notice of intention to file a claim" is alien to the AIA form language that the parties used in their contract.

For these reasons, the Court rejects the County's assertion that the solution is to overlay § 4-7 of the ordinance upon § 4.3 of the contract, thereby creating a ten-day "notice of intention" period *and* a twenty-one-day claim filing period with the architect *and* a sixty-day filing period with

the Board. Such a concoction would be inconsistent with the ordinance and inconsistent with the intentions of the parties as expressed in their contract.

Nevertheless, the County argues, if § 4-7 of the ordinance and § 4.3 of the contract cannot be reconciled, the terms of the contract preempt the ordinance. This argument is without merit.

As we have seen, to opt out of the Procurement Act, a public body must adopt alternative policies and procedures. Those policies and procedures must be "generally applicable to procurement of goods and services by such governing body . . . ." If, as the County suggests, it can "pre-empt" (and thereby repudiate) provisions of its own procurement ordinance .whenever it chooses to do so by separate contract, its ordinance would violate § 11-35(D) and thence be invalid because it would not be "generally applicable."

Therefore, the court is of the opinion that notwithstanding the contractual time limitations in § 4.3 of the General Conditions, the County is bound by the two-step procedure of its procurement ordinance, so that it must recognize claims submitted within the time requirements of § 4-7 of the ordinance even though those claims may not have been submitted within the time limitations of § 4.3 of the contract.

(The court expresses no opinion about the validity of a local procurement ordinance that would expressly allow the County to deviate from the claims procedure in its ordinance under certain specified circumstances. The County's ordinance contains no such provision.)

Perhaps adverse consequences would befall a contractor who does not submit his claims to the architect for resolution within twenty-one days, as required by the contract, but for the reasons explained, the County cannot by contract make that submittal a condition precedent to litigation since to do so would create a more restrictive claims procedure at fatal variance with the County's procurement ordinance.

Specifically, then, if the claims now asserted by Hall were submitted to the Board in writing no later than sixty days after final payment, and if Hall gave written notice of its intention to file such claims within ten days of the occurrence of the event giving rise to the claim or the beginning of the work upon which the claim is based, the claims would survive the County's plea and demurrer.

### Review of Attachments; Craving Oyer

The parties invite the court to look at the various attachments to their pleadings and memoranda and determine whether Hall submitted the claims asserted in this litigation in a proper and timely manner. This invitation is accompanied by a representation to the court that to "simplify and expedite" matters, the parties have agreed to use these attachments "without first holding a separate hearing on the motion to crave oyer."

In its original form, craving oyer was a demand that a party suing on a document read the document in open court (*"et ei legitur in haec verba"*) to the defendant. Later, the procedure was modified so that the plaintiff was compelled to provide a *copy* of the document being sued on to the defendant. So if the claim is based on a document that is not filed with the initial pleading, the defendant can "crave oyer," or make a motion craving oyer, for the court to order that a copy of the document be produced. In this manner, a defendant may file a demurrer or a plea that otherwise he could not file where a review of the document sued on is essential to a determination of whether the plaintiff's pleading states a cognizable cause of action. *Charter Communities v. Lees Hill Partnership*, 31 Va. Cir. 417 (1993); also see Bryson, Handbook on Virginia Civil Procedure (2d ed. 1989), pp. 214-215.

In this case, the factual basis of the suit is the contract. However, the threshold issues raised by the County's plea and demurrer require a review of the papers that Hall says support its contention that notices of intention to file claims and the claims themselves were submitted in a timely and proper manner. Hall has produced those papers as attachments to its pleadings and memorandum; also, with Hall's occurrence, the County has attached papers to its memorandum. In that manner, the parties say that they have resolved the issue of "craving oyer," and the court can now decide whether the claims were timely made.

Respectfully, the court declines the invitation.

A perusal of Hall's amended motion for judgment and appeal of disallowance of claim reveals at least twenty-two specific claims, plus other general claims, totaling well in excess of $300,000.00. Hall alleges in the pleading that it complied with the requirements of § 4.3 of the contract, the requirements of the Procurement Act, and the requirements of § 4-7 of the County's procurement ordinance. Whether Hall in fact complied with the applicable requirements for each claim necessitates a tedious correlation of each claim with each piece of paper that Hall alleges constitutes a submittal of its notice of intention to file that claim, or submittal of the

claim itself, to the County. Given the manner in which these papers have been tendered to the Court, that is an impossible task. Further, even if the court could relate each paper that purports to be a "notice of intention" to a specific claim set forth in Hall's pleading, it would be impossible to determine without stipulations or the taking of evidence whether each such paper that the court found to be a proper "notice of intention" was in fact submitted within ten days of the occurrence of the event giving rise to the claim or the beginning of the work upon which the claim is based.

For this reason, the court must deny the plea in bar and overrule the demurrer.

### Hall's Excuses

Hall contends that if its notices of intention and its claims were not timely submitted, it is excused for various reasons. None of the excuses alleged by Hall, even if true, would justify a failure to file notices and claims in the manner and within the time limitations applicable here.

First, Hall's assertion that the County's "hindrances," "breaches," or the "futility" of it all do not excuse Hall from submitting timely claims. These alleged hindrances, breaches, and futility are the basis for some of Hall's claims for monetary damage. Thus, as the County notes, to accept Hall's position would essentially confirm the argument that "because I had claims, I was excused from submitting the claims."

Similarly, waiver and estoppel cannot excuse Hall's obligation to submit notices and claims in a timely and proper manner. *Main v. Department of Highways*, 206 Va. 143 (1965); *General Excavation, Inc. v. Fairfax County*, 33 Va. Cir. 120 (1993).

That Hall was coerced, tricked, or duped by the architect, acting as agent of the County, with respect to at least one of the claims, the problem with roof trusses, is belied by other allegations in Hall's pleading and by the attachments.

Trade custom cannot be used by Hall to supersede or circumvent specific requirements in the contract documents and the County ordinance, and consequently, Hall cannot complain that the County's refusal to allow substitutions somehow excuses its failure to make timely claims regarding those items.

Hall's assertion that purported inadequacies in the plans and specifications excuse it from complying with the time limits is likewise without merit. If the plans and specifications were defective, Hall would have been

entitled to submit a claim for extra time or money or both, but the defects would not exempt it for giving notice of the claim in a timely manner.

Finally, Hall's contention that it is excused from submitting timely claims because the County had actual or constructive knowledge of the claim or of the facts underlying the claim must be rejected. See *Main, supra,* and *General Excavation, supra.*

In sum, Hall is not excused from submitting notices and claims in a timely manner for any of the reasons alleged in its pleading.

## Conclusion

The court is of the opinion that Hall's notices of intention to file claims and its claims must have been submitted to the County within the time limitations and in the manner required by the County's procurement ordinance as a condition precedent to maintaining this action. The court further finds that none of the excuses asserted by Hall, even if true, is a cognizable justification for Hall's failure to make such timely and proper submittals. However, for the reasons explained, the court cannot determine at this juncture whether each claim asserted by Hall in this litigation was timely and properly submitted to the County. Accordingly, the County's plea must be denied and its demurrer must be overruled.