SENIOR JUSTICE WHITING
delivered the opinion of the Court.
*454 The dispositive issue in this appeal is whether a provision in a construction contract allows extra compensation to a contractor for certain additional work on a highway project.
In June 1992, Asphalt Roads and Materials Company, Incorporated (Asphalt Roads) contracted with the Virginia Department of Transportation (VDOT), an agency of the Commonwealth, to widen a section of Landstown Road in Virginia Beach. The contract incorporated by reference VDOT’s “January 1991 Road and Bridge Specifications” and any amendatory and supplemental specifications. Section references herein will be to the “1991 Road and Bridge Specifications,” as amended and supplemented.
Asphalt Roads subcontracted with Kevcor Corporation (Kevcor) to install the utility pipes in conformance with the terms of Asphalt Roads’ contract with VDOT. The contract required the contractor to remove and replace any soil that was unsuitable for use as backfill under the utility pipes.[1] The contract drawings indicated that there were 940 cubic yards of such soil. However, during excavation, Kevcor discovered that there were many more than 940 cubic yards of unsuitable soil and VDOT’s inspector required that Kevcor remove and replace that extra unsuitable soil with “borrow,” which is defined by § 101.02 as “[sjuitable material from sources outside the roadway.”
Asphalt Roads, on behalf of Kevcor (collectively the contractor), claimed additional compensation for the excess unsuitable material that was discovered, removed, and replaced with borrow. Agreeing that the contractor was entitled to a part of its claim, VDOT paid for the removal of some of the material as an “unforeseen condition” covered by § 104.02.[2] VDOT also paid for some of the backfill under § 303.06(d) (quoted later herein). VDOT declined to pay the balance of the claim for a number of reasons, some of which are involved in this appeal.
After exhausting the administrative remedies provided by Code §33.1-386, the contractor sued VDOT in the Circuit Court of the City of Virginia Beach under the provisions of Code § 33.1-387. At *455 issue was the contractor’s right of recovery and, if it had such a right, how much borrow had been required and how much unsuitable material had to be removed and disposed of.
The circuit court resolved these factual disputes by holding that the contractor was entitled to payment for an additional 8,657 cubic yards of backfill and 8,807 cubic yards of unsuitable material. The court adopted VDOT’s contention that compensation for the backfill should be awarded at the contract-stated unit price of $6.18 for select borrow and awarded the contractor $53,500.26 on that claim.[3] With regard to the disposal of unsuitable material, the court adopted the contractor’s contention that compensation should be in the amount of $11.16 per cubic yard, the unit price stated in the contract for the disposal of similar materials, and awarded the contractor $98,286.12 for that claim.
On VDOT’s appeal, the Court of Appeals reversed the portion of the judgment awarding the additional compensation, affirmed a part of the judgment, and remanded the case for further proceedings on issues not material here. We awarded the contractor an appeal limited to the hereinafter described issues.[4]
Here, the dispute is whether the Court of Appeals properly denied the contractor’s described claim for extra compensation for excavating, removing, and replacing unsuitable material under and around the utility pipes. Among other things, the contractor contended that §§ 104.03 and 303.06 applied, not only to allow the claim, but also to fix the amount of the contractor’s compensation.[5] The Court of Appeals adopted VDOT’s contention that §§ 302.04 and 520.06 were *456 the controlling sections and that they did not provide for extra compensation.
For the reasons which follow, we do not think that §§ 302.04 and 520.06 control or conflict with the sections relied upon by the contractor to sustain its claim. As pertinent, §§ 302.04 and 520.06, both entitled “Measurement and Payment,” provide generally that excavating, backfilling, disposing of unsuitable material, and restoring existing surfaces, are included in the contract unit price for pipe. However, neither deals specifically with the problems at hand, as do the sections relied upon by the contractor.
First, we decide whether the contractor is entitled to compensation for the backfill that had to be obtained from offsite sources to replace the unsuitable material. VDOT argues that §§ 302.04 and 520.06 preclude the payment of additional sums for obtaining borrow to replace the excess unsuitable soil removed by the contractor. For the following reason, we find no merit in this contention.
Section 303.06, also entitled “Measurement and Payment,” provides, in subsection (d) that:
Furnishing and placing backfill material, including backfill for undercut, will be included in the price for excavation . . . unless . . . suitable material is not available within the construction limits. . . . When suitable material is not available within the construction limits, the material furnished and placed by the Contractor will be paid for in accordance with Section 109.05.
Section 303.06 is specific in providing that when suitable backfill is not available on the job site, the contractor will be compensated for the backfill provided from off-site sources. Hence, we hold that § 303.06 authorizes additional compensation to the contractor for having provided the additional backfill material. Accordingly, the trial court did not err in allowing additional compensation for that claim.
Next, we consider whether the contractor is entitled to additional compensation for removing and disposing of the excess unsuitable material. The contractor claims that it is entitled to such compensation under § 104.03, the differing site conditions clause. That section provides, in pertinent part, that
[djuring the progress of the work, if subsurface or latent physical conditions are encountered at the site differing materially from those indicated in the contract,
*457 then upon notification to VDOT and its determination that the conditions are materially different, “an adjustment, excluding anticipated profit, will be made and the contract modified” to compensate the contractor for the contractor’s increased cost.
The purpose of the differing site conditions clause and similar clauses, described in a number of cases as the “changed conditions clause,” has been stated in several cases. The North Carolina Court of Appeals, for example, has stated that its purpose is “[t]o encourage low, competent bids,” Ray D. Lowder, Inc., v. North Carolina State Highway Comm’n, 217 S.E.2d 682, 696, (N.C. Ct. App.) cert. denied, 218 S.E.2d 467 (N.C. 1975).
Similarly, the Court of Claims stated that the purpose of the clause was:
[T]o take at least some of the gamble on subsurface conditions out of bidding. Bidders need not weigh the cost and ease of making their own borings against the risk of encountering an adverse subsurface, and they need not consider how large a contingency should be added to the bid to cover the risk. They will have no windfalls and no disasters. The Government benefits from more accurate bidding, without inflation for risks which may not eventuate. It pays for difficult subsurface work only when it is encountered and was not indicated in the logs.
Foster Constr. C. A. & Williams Bros. Co. v. United States, 435 F.2d 873, 887 (Ct.Cl. 1970).
Although the differing site conditions clause included in the contract at issue must be included in most federal highway construction contracts pursuant to 23 C.F.R. § 635.109 (1997), apparently VDOT voluntarily inserted the clause to obtain its benefits in securing the lowest competent bids. VDOT does not question the wisdom and utility of the differing site conditions clause, but instead contends that it does not apply to mere increases in government-estimated quantities of material as distinguished from the character and nature of materials. We disagree.
Since we apparently have not been confronted with this issue and the clause in question is similar to those in federal construction contracts, both parties cite, and we consider, cases arising under those contracts. Although VDOT cites cases allegedly supporting its contention that changes in quantity are not cognizable under the differing site conditions clause, we note that most of those cases *458 deal with substantially different factual situations. We think that the better view is expressed by the following statement of the Court of Claims:
The legal conclusion of the Appeals Board that a 39 percent overrun [in clearing all trees and brush along a 20 mile stretch of a river], in the facts and circumstances of this case, was a material change and warranted a price adjustment [under the change of conditions clause], is supported by numerous decisions in this court. To do otherwise, and hold the contractor to its original lump-sum bid, would negate one of the prime reasons for incorporating a “changed condition” article into these contracts, i.e., “to induce bidders not to increase their prices to cover possible misfortunes which might result from unforeseen developments.” This is true even though the Army attempted to protect itself by inserting caveatoxy and exculpatory provisions in the contract.
Schutt Construction Co., Inc. v. United States, 353 F.2d 1018, 1021 (Ct.Cl. 1965) (internal citations omitted).
We think that whether the changed conditions are “conditions . . . differing materially from those in the contract” under § 104.03 is a question of fact regardless of whether the claimed changes result in quantitative or qualitative changes to the work to be performed.
Even so, VDOT argues that the contractor has failed to make the necessary showing that it could not reasonably have áscertained from information available to it at the time of bidding that there would be an excess amount of unsuitable soil. Part of the evidence suggests that the contractor’s employees should have anticipated the excessive amount of unsuitable material which would be encountered from their excavation experience of similar nearby areas. On the other hand, the contractor’s employees testified that there was no practical way of ascertaining whether there was much more unsuitable soil to excavate than that contemplated by the contract.
Thus, the evidence conflicted on this issue, and that conflict has been resolved by the trial court’s decision implicitly rejecting VDOT’s contention.[6] Since credible.evidence supports that decision, *459 we, as the reviewing court, must reverse the judgment of the Court of Appeals and reinstate the circuit court’s judgment on that issue. See Rogers v. Marrow, 243 Va. 162, 166, 413 S.E.2d 344, 346 (1992) (circuit court must reinstate jury verdict if credible evidence to support it).
Next, VDOT argues that the Court of Appeals correctly applied § 102.04 to deny the claim on the ground that this section made the contractor responsible for any alleged excess quantities of unsuitable soil. As pertinent, § 102.04 provides:
The submission of a bid will be considered conclusive evidence that the bidder has examined the site of the proposed work, proposal, plans, standard drawings, specifications, . . . and any other documents specified in the proposal before submitting a bid and is satisfied as to the conditions to be encountered in performing the work and requirements specified in the proposal.
The submission of a bid will be considered conclusive evidence that the bidder is satisfied with regard to the subsurface conditions to be encountered in the work.
Additionally, VDOT notes other warnings in § 102.04 which advise bidders that the available subsurface data are accurate with regard to test borings only and disclaim any warranty regarding subsurface conditions or the condition, amount, or nature of the material which may be encountered.
We reject these contentions. If we applied these sections to the change of condition shown in the evidence in this case, we would render meaningless the language of sections like § 104.03 and negate their salutary purposes. See Schutt Constr. Co., 353 F.2d at 1021. For *460 these and other reasons, a number of cases have rejected similar contentions dealing with the relation of clauses like § 102.04 to clauses like § 104.03. See e.g., United Contractors v. United States, 368 F.2d 585 (Ct.Cl. 1966); Fehlhaber Corp. v. United States, 151 F. Supp. 817 (Ct.Cl.), cert. denied, 355 U.S. 877 (1957); Ray D. Lowder, Inc., 217 S.E.2d 682; Morrison-Knudsen Co. v. United States, 397 F.2d 826 (Ct.Cl. 1968).
Finally, and contrary to VDOT’s contention, we conclude that since § 104.03 applies to a specific situation, “differing site conditions,” it controls, rather than the general language in §§ 302.04 and 520.06. We hold, therefore, that the contractor was entitled to additional compensation for the disposal of the excess material under § 104.03 of the contract.
For these reasons, we will reverse the judgment of the Court of Appeals, which reversed the circuit court’s judgment awarding $151,786.38 to the contractor on the above claims. We will also enter final judgment in favor of the contractor on those claims, as provided in the judgment of the circuit court.[7] We will remand the case to the Court of Appeals for its remand to the trial court for further action in conformance with the balance of the opinion of the Court of Appeals.

Reversed, final judgment in part, and remanded.

 Section 101.02 defines backfill as “[m]aterial used to replace or the act of replacing material removed during construction; may also denote material placed or the act of placing material adjacent to structures.”

 Section 104.02(a) provides, in pertinent part: “Alterations of Quantities!)] [VDOT’s] Engineer reserves the right to make, in writing, at any time during the work, such changes in quantities and such alterations in the work as are necessary to satisfactorily complete the project.” (Emphasis added.)

 Section 101.02 defines select borrow as “[bjorrow material that has specified physical characteristics.”

 Because this case originated before an administrative agency, the judgment of the Court of Appeals is ordinarily final and not subject to further appeal. Code § 17.1-410. However, we granted this appeal because we consider the primary issue involved to be a matter of significant precedential value. Id.

 We reject VDOT’s contention that the contractor did not assert the differing site conditions clause either in the trial court or in the Court of Appeals. Our inspection of the record indicates that the contractor argued that § 104.03 was the applicable section on several occasions. First, the contractor introduced written correspondence with VDOT into evidence in which it asserted that § 104.03 was applicable. Second, at least one witness was specifically questioned by the contractor’s counsel about § 104.03. Third, the contractor argued that § 104.03 was the applicable term on page 10 of its brief in the Court of Appeals. And indeed, the same attorney for VDOT who contends here that the differing site conditions clause was not asserted by the contractor in the courts below specifically responded to that contention when asserted by the contractor not only in his oral argument for VDOT in the trial court, but also in VDOT’s brief in the Court of Appeals.

 Although the record does not indicate which section of the specifications the trial court applied in awarding a judgment on this claim, in the absence of clear evidence to the contrary in the record, we presume that it correctly applied the provisions of Code § 104.03 to the facts and that, in doing so, it resolved any conflict in the facts in favor of the contractor. See Bottoms *459 v. Bottoms, 249 Va. 410, 414, 457 S.E.2d 102, 105 (1995) (absent clear evidence to contrary in record, appellate court assumes trial court correctly applied law to facts and also views facts in light most favorable to party prevailing in trial court).
We do not think that the trial court could have made an award under § 104.02 as set forth in the concurring opinion, because these were not “changes” that were made by VDOT’s engineer, as expressly provided in that section and no such “changes” were made in writing, as further provided in that section. Indeed, VDOT, in making its payment of a part of these claims, characterized them as arising from an “unforeseen condition,” one of the predicates for payment under § 104.03.

 Because neither VDOT nor the contractor questioned the trial court’s computation of the amounts due the contractor, the Court of Appeals did not, and we will not, review the trial court’s method of determining the amount of extra compensation due to the contractor.