## CIRCUIT COURT OF SPOTSYLVANIA COUNTY

MCI Constructors

> v.

Spotsylvania County

August 4, 2003

Case No. CL01-342

By Judge William H. Ledbetter, Jr.

In this construction case, the court is called upon to decide whether the contractor's claims are barred because it failed to comply with notice provisions required by law and the parties' contract and because it did not submit its claims to the owner in a proper manner.

*Summary of Facts*

In March of 1997, Spotsylvania County and MCI entered into a fixed-price contract for construction of a water treatment facility at Motts Run Reservoir. The contract price was $22,316,500.00. In July of that year, the county notified MCI to proceed, with an agreed "substantial completion" date of September 1, 1999.

The contract documents, about which there appears to be no dispute, include a basic agreement with five addenda, general requirements, plans and specifications, and a host of change orders.

The facility was designed for the County by the engineering firm of Gannett-Fleming, Inc. That firm also represented the County on-site, administering the project.

As work progressed, disputes arose. Delays occurred. Extra work was required. Various "proposed" change orders were submitted from time to time by MCI. Some were rejected. Fifty-six change orders were approved and signed by everyone.

On February 8, 2001, MCI submitted a "Request for Equitable Adjustment" to the County, requesting additional payment of $9,265,511.00 and a time extension of 245 days. The County did not act on MCI's "Request for Equitable Adjustment"; thus, MCI instituted this action in August of 2001.

The parties engaged in discovery and appeared before the court for hearings on various motions. On May 15, 2003, the court conducted a day-long evidentiary hearing on the County's plea in bar. Thereafter, by agreement, the court took the case under advisement so that counsel could submit additional written arguments. This opinion addresses the issues raised in the plea in bar.

## The Issues

The County contends that MCI failed to give timely notices with respect to 93 of its 106 claims asserted in this litigation, thereby barring those claims from consideration.

The County further argues that the "Request for Equitable Adjustment" submitted to the County by MCI at the conclusion of the project is not a "claim" as defined by law or by the parties' contract. For that reason, the County says, MCI cannot proceed with its lawsuit.

Finally, the County contends that many of MCI's claims, even if properly submitted, are barred because the change orders upon which the claims are based contain language by which MCI expressly waived additional compensation.

## The Statutes

Generally, the procedure for filing claims against counties in Virginia is set forth in Virginia Code § 15.2-1243 et seq. The Public Procurement Act, § 2.2-4300 et seq., has its own requirements for submitting claims and maintaining actions on procurement contracts, including construction contracts. Because the Procurement Act is more specific, its provisions prevail over the more general claims provisions found in § 15.2-1243 et seq.

The Procurement Act contains a two-step procedure for submitting contractual claims. First, a contractor must provide written notice of his

intention to file a claim "at the time of the occurrence or beginning of the work upon which the claim is based." Then, a written claim must be filed "no later than sixty days after final payment." Section 2.2-4363(A).

The Procurement Act also provides that every public contract shall include "a procedure for consideration of contractual claims." Section 2.2-4363(B).

A county may opt out of the Procurement Act, with some exceptions not pertinent here, if it adopts its own procurement policy generally applicable to procurement of goods and services. Section 2.2-4343(10). Spotsylvania County has adopted its own procurement policy, and that policy was in effect during the period of this contract.

### Spotsylvania County Procurement Policy

The provision of the County's procurement policy that governs claims contains the same language as § 2.2-4363(A) except the County extends a ten-day grace period for giving notice of intention to submit a claim.

### The Contract

The contract between the County and MCI contains typical language establishing a "change order process" for changes and extra work. If the contractor claims that any change involves extra cost, he must notify the engineer "within seven days after being advised of such change" and "before proceeding to execute the work." No claim asserted by the contractor shall be valid unless made in the manner provided and approved by the owner and engineer. General Conditions, Section II, § 2.30.

The contract contains a separate section involving "presentation of the contractor's claims." The contractor can make no claim against the owner either during the prosecution of the work or upon completion of the project unless it has given the owner notice of intention to present such claims "within ten days from the happening of the event, thing, or occurrence giving rise to the alleged claim." General Conditions Section II § 2.32.

### Issue No. 1: Notice of Intention to Submit Claims

According to the County, an "occurrence" that triggers the notice-of-claim requirement is "when the contractor encounters a circumstance that would mean a change in contract compensation or contract schedule." Therefore, says the County, the contractor must give the notice at an early point, even

before a dispute arises and before or at the time the contractor begins the extra work.

Conversely, MCI argues that there can be no "occurrence" giving rise to a claim "until an actual dispute comes into existence. . . ." Further, MCI asserts, two other factors must converge: the contractor "must know that its work has been impacted by a specific condition or action attributable to the owner," and the contractor must know "it has a good faith basis to assert a claim. . . ."

The court declines the parties' invitations to craft a universal definition for the phrase "the occurrence or beginning of the work upon which the claim is based" or to pronounce a one-size-fits-all rule for applying the phrase to public construction disputes. As the Virginia Supreme Court observed in *Flory Small Business Dev. Ctr. v. Commonwealth*, 261 Va. 230 (2001), "By identifying more than one event that triggers the filing of an intent to file a claim, the [procurement] statute acknowledges that not all claims will arise under the same circumstances. ... Thus, the timing and form of an alleged notice of intent pursuant to Va. Code § 11-69(A) [now § 2.2-4363] requires an examination of the circumstances of each case." Although the Court was addressing the Public Procurement Act in *Flory*, its observation is just as applicable to this case because the County's procurement policy and the parties' contract contain almost identical language, except that the latter includes a ten-day grace period.

Turning, then, to the circumstances of this case, it is apparent from the parties' contract that they put in place (1) a typical, workable "change order" process, and (2) a claim-filing process consistent with state and county procurement laws. These two processes were not intended to be separate and distinct, as argued by MCI, nor were they intended to duplicate one another, as suggested by the County. Instead, these processes were designed to work together, each complementing the other.

When, during the course of work, MCI submitted a proposed change order in response to a request or directive in the field, it was not required to submit at the same time a notice of intention to submit a claim. The County's assertion to the contrary is without merit. The two processes do not work that way. Applying common sense to the daily routine of a large construction project, one must ask: why should a contractor give such a notice at that juncture? Changes are routine and anticipated components of construction projects and generally do not provoke irresolvable disputes. In this case, fifty-six such change orders were finalized in the ordinary course of things. In each

such instance, at the time MCI initially proposed a change order, there was no dispute nor was there a foreseeable prospect of a dispute.

On the other hand, at the first indication from the County or its representative, the engineer, that the proposal for additional time or money would be denied, would not be honored, would be disapproved, or would be rejected in whole or in part, then the claim-filing process was implicated. MCI's assertions that the triggering "occurrence" should be delayed until the contractor can determine more precisely the monetary impact of the change and until the matter erupts into a full-fledged "dispute" are without merit.

Quoting a construction law text, the County correctly points out in its post-hearing memorandum the essential purpose of the claim-filing process found in public procurement laws and public contracts:

> Provisions requiring written notice of claims serve to protect the owner by allowing the owner an opportunity to evaluate the situation before the work is performed and the costs are incurred.

County Memorandum, p. 13, filed June 18, 2003.

This quotation could be no more prophetic than here. MCI is asserting claims totalling more than nine million additional dollars on a twenty-two million dollar fixed-price contract. The magnitude of the assertion, first presented with clarity on February 8, 2001, many months after the project was scheduled to be completed, is staggering. Obviously, the process established in the procurement policy of the County and the processes for claims resolution set forth in the parties' contract had broken down.

Thus, the court holds that MCI did not give notices of intent to submit claims within ten days of "the occurrence," i.e., upon learning that its proposed change orders were being denied, disallowed, or disapproved, in whole or in part, as the parties' claim-filing process required.

The court rejects MCI's argument that it "substantially complied" with the notice requirement in the manner by which it processed its proposals and the form change orders.

With respect to MCI's proposed change orders that were denied or rejected, a "notice of intention" was not accomplished by the transmission of the rejection letter (or similar paper) from the engineer, with a copy to the County, as argued by MCI in its post-hearing memorandum. MCI Memorandum, p. 33, filed June 30, 2003. That cannot be; in fact, it is incongruous. The engineer

was the County's representative in administering the construction contract. So, a rejection letter authored by the engineer addressed to MCI could not possibly constitute a notice by MCI to the County.

With respect to the proposals that were transposed onto change order forms, the notice of intention was not accomplished by MCI's letters of transmittal, as argued by MCI in its post-hearing memorandum. MCI Memorandum, p. 32, filed June 30, 2003. Again, this cannot be. Those transmittal letters informed the County that MCI did not like the restrictive language contained in the pre-printed change order forms. They provided no notice to the County that would permit early investigation of a specific assertion so as to enable the government entity to control its costs and weigh alternatives.

Accordingly, for the reasons explained, the court is of the opinion that MCI's claims arising out of the routine change order process are barred because MCI failed to give timely notice of its intention to submit such claims.

Three other claims arise out of circumstances not related to the change order process. The court is of the opinion that those claims are barred because MCI failed to give timely notice of them.

In these instances, MCI argues that it notified the County as soon as it completed its investigation into the cause of the problem and the effect on the contract price. This argument assumes, of course, that the court adopts the definition of "occurrence" advanced by MCI, which includes a factor attributable to time for the contractor to "know that its work has been impacted" and a factor attributable to time to know that there is "a good faith basis to assert a claim. . . ." These factors are expanded even further in these three instances to cover time for MCI to investigate the leaks in the clearwells, the cause of and the real impact associated with a delay in delivery of switchgear, and the reason for and "ultimate impact of" the delay in delivery of certain other equipment.

In fact, the leaks and the delays were known for months by all parties to the contract before MCI made any claim assertion or presented any notice of intention to submit a claim regarding those matters. The court is of the opinion that the occurrence triggering the notice requirement in each such instance was not just MCI's receiving notice of the problem, but its receipt of notice that the County intended to hold MCI responsible for it. At that point, MCI had a duty to give the County notice of its intention to make a claim with regard to

---

[1] The County concedes that it received written notices for thirteen claims, shown on the Claims Matrix Chart. Those claims are not affected by this decision.

that matter so the County could evaluate the situation and weigh alternatives to control its costs.

## Issue No. 2: The Claim

The County contends that the "Request for Equitable Adjustment" is not a claim, thereby precluding this litigation. The court does not agree.

A claim is a broad and comprehensive word, meaning "to demand as rightfully belonging to one." It can be any assertion or demand seeking as matter of right adjustments, payments of money, extensions of time, or other relief. See *D. R. Hall Const., Inc. v. Spotsylvania County*, 40 Va. Cir. 260 (1996).

The Request for Equitable Adjustment dated February 2001, transmitted to the county by MCI's attorney on February 8, 2001, expressly "requests" additional compensation of $9,265,511.00 and additional time equal to 245 days, "pursuant to the Agreement between the parties." The Request speaks of "claim issues" and declares a hope for a process that "will lead to resolution" of those issues. The cover letter accompanying the Request for Equitable Adjustment specifically refers to the submittal as a "claim."

The court is of the opinion that the Request for Equitable Adjustment is a claim, as that word is used in the procurement policies and in the parties' contract.

This case is distinguishable from *Lyttle Co. v. Hanover County*, 231 Va. 21 (1986), where the Supreme Court held that the contractor's settlement proposal was not equivalent to a "claim." MCI's Request for Equitable Adjustment, viewed as a whole and in conjunction with the cover letter, is not a settlement proposal or just a request for a meeting. MCI clearly asserted a right to extra payment, and such a submittal constitutes a "claim."

The fact that the Request for Equitable Adjustment was not filed directly with the governing body is of no consequence. The County Administrator is the appropriate recipient for notices and filings meant for the governing body, the Board of Supervisors.

## Issue No. 3: Waiver

The County argues that MCI waived its claims in the change order process by signing change orders that contained restrictive language.

Although this issue is moot in light of the court's treatment of Issue No. 1, the court is of the opinion that MCI did not waive its rights in the change order process with respect to those change orders that it signed and to which it attached an express disclaimer of the restriction. Under the circumstances, MCI had no other way to effect a change because the change orders were preprinted forms (apparently supplied by the engineer) with the restrictive language contained in them.

## Conclusion

All claims asserted in this action, except for thirteen claims identified on the Claims Matrix Chart, are barred because of MCI's failure to give timely notice of its intention to submit such claims. Therefore, the County's plea in bar is sustained.