# CIRCUIT COURT OF ROCKBRIDGE COUNTY

Faulconer Construction Co., Inc.

v.

Branch & Associates, Inc.

June 6, 2012

Case No. CL11000170-00

BY JUDGE MICHAEL S. IRVINE

In this construction case, the court is called upon to decide whether the subcontractor's, Faulconer's, claims are barred because it allegedly failed to comply with notice provisions required in the parties' contract. The general contractor, Branch, filed a plea in bar, and the parties have submitted written memoranda in support of their respective positions. An evidentiary hearing on the issue was held on April 26, 2012. At that time, the court took the case under advisement. This opinion addresses the issues raised in the plea in bar.

Branch contends that Faulconer failed to give timely notice of its "claim" under § 5.2 of the subcontract. Branch argues that Faulconer was fully aware of the "condition," excess rock, at least by February 24, 2010, but failed to give any notice to Branch until March 30, 2010, well past the time frame (immediately upon first knowledge of the claim condition or first event giving rise to such claim, and under no condition later than seven days after the event's occurrence) provided for in § 5.2.

Faulconer argues that the notice provision requires a "two step claim process" that first provides for a "notice of intent to file a claim" that is preliminary to an actual "notice of claim" and the former only need be given within a reasonable period of time. Faulconer contends that a "claim" does not occur until a request for payment is denied and it is only then that the seven day notice requirement is implicated. In support of its position, Faulconer relies heavily on cases that have considered notice requirements in the context of the Virginia Procurement Act, Va. Code § 15.2-1243 *et seq.*, or similar locally adopted public procurement policy. However, the parties agree that the contract at issue in this case is not subject to the requirements of

the Virginia Procurement Act or any similar local ordinance. Faulconer also claims that the requirements of § 5.2 of the subcontract are not applicable because there was a "different site condition" as defined in Appx. B, § 23, of the subcontract. Faulconer claims the "different site condition" clause only required that notice be given prior to the condition's being disturbed. Faulconer contends that, even though it had disturbed the "pond site" where more rock than it anticipated was also found, it did not disturb the remaining portion of the site until after the March 30, 2010, "notice of claim" had been given and, therefore, the March 30 notice satisfied the notice requirement of Appx. B, § 23. In addition to the language of Appx. B, § 23, requiring notice prior to disturbance of the "condition," that section also requires that "any change in the cost of the work or the time needed for completion must be requested in writing within three business days of discovery of said change.

The Supreme Court of Virginia has stated that the primary goal in construing contracts is to determine the intent of the contracting parties and intent is to be determined from the language used by the parties, the surrounding circumstances, the occasion, and apparent object of the parties. *Christian v. Bullock*, 215 Va. 98, 102, 205 S.E.2d 635 (1974). It is the duty of the court to construe the contract made between the parties, not to make a contract for them. It is the court's duty to declare what the instrument itself says it says. *Flippo v. CSC Assocs.*, 262 Va. 48, 547 S.E.2d 216 (2001), citing *Ames v. American Nat'l Bank*, 163 Va. 1, at 38, 176 S.E. 204 (1934). Applying that standard, the court finds that the language of the subcontract required Faulconer to provide "notice for any and all claims . . . in writing immediately upon Subcontractor's first knowledge of the claim condition or first event giving rise to such claim and under no condition . . . later than seven (7) days. . . ."

It is apparent that, by February 24, 2010, if not earlier, Faulconer had substantial and indisputable evidence that the amount of rock encountered on this project for which it had the responsibility to remove exceeded its estimate by somewhere between two and three times. However, despite this knowledge, Faulconer did not give any notice of any type to Branch until March 30, 2010. If nothing else, on February 24, 2010, Faulconer surely knew that the cost for removing such rock was going to be substantially more than it had anticipated and included in its bid. Applying the contract language to these circumstances, Branch was entitled to receive notice if Faulconer intended to make a claim for the cost of removing the additional rock. This is especially so since there is apparently no dispute that the underlying subcontract called for "any rock or unsuitable soil removal and/or replacement required will be performed by this Subcontractor *at no additional expense to Contractor*." (Subcontract at p. 27; emphasis added.) It is in this context that the court considers the notice requirements contained in the subcontract.

Unlike the facts of *MCI Constructors v. Spotsylvania*, 62 Va. Cir. 375 (2003), this case does not involve a "change order" which, as noted by counsel for Faulconer, may sometime result in a claim and sometimes not. Rather, Faulconer's obligation to remove all of the rock, whatever the amount, did not change. Faulconer simply requests more money to perform what was at least arguably already its contractual obligation. Faulconer's Complaint for breach of contract and constructive fraud alleges that it relied upon a geotechnical report provided by Branch in formulating its bid for rock removal and, because of misrepresentations in the geotechnical report, Faulconer should be compensated for the cost of excess rock removal. Assuming this to be the case, it is all the more reason that timely notice should have been given in order for Branch and the Virginia Military Institute to promptly address and assess the resulting claim being made by Faulconer. The "claim condition" is not the denial of a "change order claim" as was the case in *MCI, id.* Under the circumstances of this case, the "claim condition" must necessarily mean whatever happens that gives the subcontractor knowledge that additional money will be requested to perform its obligation. Obviously, the amount of rock present did not change. The rock was always there. The only thing that changed was Faulconer's knowledge or realization of the actual amount of rock. Applying the contract language, the "claim condition" or "event giving rise to such claim" was the same, i.e. Faulconer's realization of the amount of rock. Thus, the contract language contained in § 5.2 required Faulconer to give notice to Branch no later than seven days after such realization.

Faulconer contends that, because its claim is the result of a "different site condition," as defined in App. B, § 23, the § 5.2 notice requirements are not applicable. The Supreme Court of Virginia has recognized that a "different site condition clause" in such contracts serves a laudatory purpose:

> To take at least some of the gamble on subsurface conditions out of bidding. Bidders need not weigh the cost and ease of making their own borings against the risk of encountering an adverse subsurface, and they need not consider how large a contingency should be added to add to the bid to cover the risk. . . . The government benefits from more accurate bidding, without inflation for risks which may not eventuate.

*Asphalt Roads & Materials Co. v. Commonwealth*, 257 Va. 452, 457, 512 S.E.2d 804 (1999), quoting *Foster Constr. C.A. & Williams Bros. Co. v. United States*, 193 Ct. Cl. 587, 435 F.2d 873, 887 (Ct. Cl. 1970).

However laudatory the purpose of such a clause might be, there in nothing in it that states other provisions of the subcontract, including the § 5.2 notice of claim provisions, are not applicable. Indeed, App. B, § 23, does not mention notice of "claims." It only discusses notice of conditions.

It is not inconsistent to read App. B, § 23, as requiring the subcontractor to report a changed or different condition and reading § 5.2 to require what that section says, "notice for any and all claims."

It is undisputed that Faulconer did not give any notice to Branch until March 30, 2010. This notice was not immediately after it knew that the cost to remove the rock would far exceed its bid (the claim condition) and it was not given within seven days of such realization. Moreover, the notice was not given in accordance with Appx. B, § 23, regarding "different site conditions," which required notice before the site is disturbed. The subcontract is a unified contract that required rock removal for the entire project. Faulconer had already disturbed the project site by removing the rock from the pond where it also encountered more rock than it had expected. However, even then, Faulconer did not provide notice that it would be making a claim for additional money. The subcontract does not differentiate rock removal from the pond area versus the remaining area. In addition, there is no indication that the Architect/Engineer made any changes to the contract documents to conform to any such changed conditions or that Faulconer provided any written request for a change in the cost of work within three days of discovery of such changed condition.

On February 24, 2010, Faulconer had knowledge of a claim condition or an event giving rise to a claim but failed to provide the required written notice of such claim in a timely manner. Accordingly, Branch's plea in bar is sustained.